tractor, not only the amount of the judgment recovered by the third person, but also the money legitimately expended on the appeal.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 375.*]

Appeal from Trial Term, Westchester County.

Action by David F. Murphy against the city of Yonkers. From a judgment granting insufficient relief, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, GAYNOR, and MILLER, JJ.

John F. Brennan, for appellant.
Charles E. Otis, for respondent.

HIRSCHBERG, P. J. The action is brought to recover a balance alleged to be due under a contract for construction work in one of the public streets of the city of Yonkers. It appears that, by reason of negligence on the part of the contractor in the performance of the work, an individual was injured, who recovered judgment for damages against the city, which were offset in this action; and the only question presented on the appeal is whether or not the city was entitled to include in the offset the expenses incurred in appeals taken to the Appellate Division and the Court of Appeals from the judgment for damages.

When the suit was brought against the city, the contractor was notified of the fact and asked to defend. He refused to defend the suit or to participate in the defense. When judgment was recovered, and appeals taken, as has been stated, he was duly notified of the fact, and not only made no objection, but acquiesced in the appeals to the extent of expressing the hope that the city would win. There being no dispute about the fact, and no suggestion of bad faith existing, I think the learned trial justice was correct in charging the jury that the defendant was entitled to reimbursement for the money legitimately expended on the appeals, as well as for the judgment originally rendered.

The judgment and order should be affirmed, with costs. All concur.

---

MAYOR, ETC., OF CITY OF NEW YORK v. BLEECKER ST. & F. FERRY R. CO.

(Supreme Court, Appellate Division, First Department. March 12, 1909.)

1. STREET RAILROADS (§ 39*)—MAINTENANCE OF TRACKS IN PUBLIC STREETS—CHANGE OF GRADE.

A street railroad company must keep its structures in such repair that the street will be safe for travel, and on the municipality changing the grade of the street it must lay its tracks at the new grade.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 104; Dec. Dig. § 39.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. STREET RAILROADS (§ 38*)—MAINTENANCE OF TRACKS IN PUBLIC STREETS—
NEW PAVEMENT—REPAIR.

A company, bound by statute or by contract with the municipality to keep the pavement within its tracks in repair, must bear its proportion of the cost of a new pavement and keep the same in repair.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–102; Dec. Dig. § 38.*]

3. STREET RAILROADS (§ 38*)—MAINTENANCE OF TRACKS IN PUBLIC STREETS—
NEW PAVEMENT—REPAIR—MATERIAL.

A street railway company must keep the portion of the pavement adjacent to or a part of its tracks in repair with the materials and in accordance with any new improved pavement.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 103; Dec. Dig. § 38.*]

4. STREET RAILROADS (§ 37*)—MAINTENANCE OF TRACKS IN PUBLIC STREETS—
NEW PAVEMENT.

In the absence of statute or contract imposing a liability, a street railroad company is not required to pay the cost of a new pavement between its tracks.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 101; Dec. Dig. § 37.*]

5. STREET RAILROADS (§ 37*)—MAINTENANCE OF TRACKS IN PUBLIC STREETS—
PAVING—NOTICE TO COMPANY.

Under Laws 1890, p. 1112, c. 565, § 98, in effect May 1, 1891, requiring street railroad companies to keep in repair the portion of the street between their tracks, and providing that, on failure to make repairs after 30 days' notice, the municipal authorities may make the same at the expense of the company, a notice served on a company on February 26, 1891, which made no distinct statement to the company to repair the pavement or lay a new pavement within 30 days, nor statement as to what portion of the pavement the company should pay for, is insufficient to charge the company with liability under the act for the cost of the pavement.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 101; Dec. Dig. § 37.*]

Appeal from Judgment on Report of Referee.

Action by the Mayor, Aldermen and Commonalty of the City of New York against the Bleecker Street & Fulton Ferry Railroad Company. From a judgment entered on the report of a referee for defendant, plaintiff appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Royal E. T. Riggs, for appellant.
Arthur H. Maston, for respondent. ·

INGRAHAM, J. This action was brought to recover from the defendant the expenses sustained by the city of New York in laying a new pavement upon certain streets occupied by the defendant railroad within the area of its tracks. The plaintiff seeks to sustain this action to recover from the defendant the cost of this repavement upon three grounds: First, public policy: second, common law; and, third, the general railroad act of 1850 (Laws 1850, p. 211, c. 140), under which the defendant was incorporated. The opinion of the learned referee very satisfactorily disposes of the right of the plaintiff to recover upon

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the statutes in force at the time this new pavement was laid. It will be necessary to say but a few words in relation to the first two grounds upon which the plaintiff claims that the defendant is liable for the cost of this repavement.

The two grounds stated as public policy and common law are really included in one question, as to whether, without any legislative mandate, a railroad company legally operating a line of street railroad in the streets of a city is under an implied obligation to pave the streets or any part thereof through which their lines run. It must, I think, be conceded that it is the duty of a railroad company legally occupying a public street to keep its structure in such a condition of repair that the street will be safe for travel, and it would be liable for a neglect of that duty; and that obligation would undoubtedly continue, notwithstanding any change in the character of the street, the nature of the pavement, or the grade of the street, that was made by the municipal authorities. Thus, if the municipal authorities had changed the grade of a street and laid a pavement at a new grade, the railroad company could not maintain its tracks at the former grade, and thus create a condition which would make the use of the street dangerous or inconvenient for the public. So far as its structure was concerned, the railroad company was bound to keep it in such a condition as would conform to the established grade of the street and the established materials used in the pavement or crosswalks.

But there is no claim in this case that the defendant failed in that duty. What is here claimed is, not that the railroad company was bound to maintain its structure upon which it operated its cars so that the street would be safe for travel, but that it was bound to bear the cost of a new pavement within the boundaries of its tracks when the old pavement had been worn out. It is undoubtedly true, where there is a duty imposed upon a railroad company, either by express provision of law or by a contract with the municipal authorities, under which it acquired the right to use the streets, to keep the pavement within its tracks in repair, and where, in consequence of the changing condition of the locality or the improvement in street paving, a new kind of pavement is required, that the railroad company is bound to bear its proportion of the expense by constructing a new pavement within the boundary which it is required to keep in repair. But all the cases in this state that have imposed this liability, to which our attention has been called, upheld the liability upon one of two grounds—either an express statutory obligation or a contract with the municipality.

The city relies upon two cases of the Supreme Court of Pennsylvania. City of Reading v. United Traction Co., 202 Pa. 571, 52 Atl. 106; City of Reading v. United Traction Co., 215 Pa. 250, 64 Atl. 446. The liability of the railroad company in those cases, however, seems to have been restricted to one of repair, and imposed no duty upon it to tear up a pavement of antiquated style and replace it with a different and better one. Undoubtedly, after a new pavement had been laid, the railroad company would be required to keep such portion of the pavement as was adjacent to or a part of its structure in repair with the materials and in accordance with the new improved pavement.

The question in this case is not one of repair, but to impose upon the defendant the cost of constructing the new pavement. I can find no case and no principle established in this state which imposes upon a railroad company the duty of paying the cost of the new pavement within the boundary of its tracks, where no such liability is imposed upon it by statute or contract. In the later case in Pennsylvania (215 Pa. 250, 64 Atl. 446), the liability of the defendant seems to have been placed upon the ground that:

"When the state gives up a portion of one of its highways to a particular use, without providing that what had been the duty of the municipality as to it shall continue, such duty devolves upon the party acquiring the right to use it, and a street railway company, given the right to use such portion of a street as is needed for its tracks, in taking charge of it, is charged with the duty of properly maintaining it."

This clearly is not the law of this state. In the late case of Mayor v. Harlem Bridge, etc., Co., 186 N. Y. 304, 78 N. E. 1072, the liability of the company is based upon the provisions of its original act of incorporation, which imposed the duty upon the corporation of keeping the surface of the streets inside the rails and for one foot outside thereof in good and proper order and repair. And it was held in the case of Mayor v. N. Y. & Harlem R. R. Co., 64 Hun, 635, 19 N. Y. Supp. 67, affirmed 139 N. Y. 643, 35 N. E. 206, and in Mayor v. Eighth Avenue R. R. Co., 7 App. Div. 84, 39 N. Y. Supp. 959, that in the absence of some contract, express or implied, or some express statutory provision, the defendant was not liable to repair the pavement within its tracks. The conclusion, therefore, seems irresistable that, in the absence of some statute or contract, no obligation is imposed upon a railroad company occupying the streets of a city to bear the expense of laying a new pavement between its tracks.

I am inclined to think that section 98, c. 565, p. 1112, of the Laws of 1890, which took effect May 1, 1891, applied, as most of this work was done after this law took effect, and the liability of the defendant must be measured by the obligation imposed by that section. The learned referee has arrived at the conclusion that the notice given to the defendant was not sufficient to impose the liability upon this defendant to pay the expenses incurred upon contracts made before that act took effect. The notice was served on the 26th of February, 1891. There was no distinct notice to the defendant to repair the pavement or lay a new pavement within 30 days. It made no statement as to what portion of the pavement the defendant was required to pay for; and the letter itself seems to refer to the change in the rails or motive power, or repairs that would necessitate a disturbance of the new pavement when laid. We agree with the referee that this notice, which referred to only four of the localities for which the claim is made, was not sufficient to charge the defendant under the provisions of that act.

I think, therefore, this judgment should be affirmed, with costs. All concur.